J-S52042-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JOHN PHILIP WOLFE | : | |
| | : | |
| Appellant | : | No. 1236 MDA 2016 |

Appeal from the Judgment of Sentence June 28, 2016
In the Court of Common Pleas of York County
Criminal Division at No(s):  CP-67-CR-0001009-2015

BEFORE:   GANTMAN, P.J., LAZARUS, J., and MUSMANNO, J.

MEMORANDUM BY GANTMAN, P.J.:          **FILED SEPTEMBER 15, 2017**

Appellant, John Philip Wolfe, appeals from the judgment of sentence entered in the York County Court of Common Pleas, following his bench trial convictions of persons not to possess firearms and hunting without securing a license.[1]  We affirm.

The relevant facts and procedural history of this case are as follows. In the late 1990s, Appellant was convicted of involuntary deviate sexual intercourse ("IDSI") and burglary.  Due to his convictions, Appellant cannot possess firearms pursuant to 18 Pa.C.S.A. § 6105.  On December 2, 2014, Officer Kyle Jury encountered Appellant in a hunting tree stand located within close proximity to two residences.  Appellant was in possession of a

_____

[1] 18 Pa.C.S.A. § 6105(a)(1) and 34 Pa.C.S.A. § 2711(a)(1), respectively.

firearm at the time. Officer Jury recognized Appellant from an incident in 2013, where Officer Jury had informed Appellant he could not possess firearms due to his prior record. Officer Jury asked Appellant for identification and his hunting license, which Appellant did not have on his person. As a result, Officer Jury confiscated Appellant's firearm, confirmed Appellant's criminal history, and placed Appellant under arrest. A search of Appellant's person at the police station revealed a marijuana pipe and a small amount of marijuana.

On March 2, 2015, the Commonwealth charged Appellant with persons not to possess firearms, possession of a small amount of marijuana, possession of drug paraphernalia, unlawful hunting in a safety zone, and hunting without securing a license. Appellant proceeded to a bench trial on April 8, 2016. At the conclusion of testimony, the court took the matter under advisement pending the parties' briefs on the effect of federal case law on the constitutionality of Section 6105 of the Crimes Code. The court ultimately convicted Appellant on May 13, 2016, of persons not to possess firearms and hunting without securing a license. The court deferred sentencing pending the preparation of a pre-sentence investigation ("PSI") report.

On June 28, 2016, the court sentenced Appellant to an aggregate term of two and one-half (2½) to five (5) years' imprisonment. Appellant timely filed a notice of appeal on July 27, 2016. On September 7, 2016, the court

J-S52042-17

ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant filed his Rule 1925(b) statement on October 6, 2016.[2]

Appellant raises the following issues for our review:

WHETHER THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE CONVICTION OF PERSONS NOT TO POSSESS [FIREARMS]—18 PA.C.S.A. [§] 6105— WHERE…APPELLANT PROVIDED CREDIBLE TESTIMONY THAT HE RECEIVED NOTICE THAT HIS FIREARMS DISQUALIFICATION WOULD EXPIRE?

WHETHER EVIDENCE WAS INSUFFICIENT TO SUPPORT A CONVICTION WHEREIN RECENT FEDERAL [CASE LAW] RECOGNIZED THAT APPELLANT COULD POSSESS A FIREARM?

(Appellant's Brief at 4).

With respect to his first issue on appeal, a challenge to the sufficiency of the evidence implicates the following legal principles:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there

_____

[2] To preserve claims for appellate review, an appellant must comply whenever the trial court orders the appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). **Commonwealth v. Castillo**, 585 Pa. 395, 403, 888 A.2d 775, 780 (2005). This Court, however, may address the merits of a criminal appeal where a defendant files an untimely Rule 1925(b) statement, if the trial court had adequate opportunity and chose to prepare an opinion addressing the issues raised on appeal. **Commonwealth v. Burton**, 973 A.2d 428, 434 (Pa.Super. 2008) (*en banc*). Here, Appellant did not timely file his Rule 1925(b) statement. Nevertheless, the trial court received the statement and prepared an opinion addressing the issues raised on appeal. Therefore, we decline to find waiver on this basis. **See id.**

- 3 -

is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Jones*, 874 A.2d 108, 120-21 (Pa.Super. 2005) (quoting *Commonwealth v. Bullick*, 830 A.2d 998, 1000 (Pa.Super. 2003)).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Michael E. Bortner, we conclude Appellant's first issue on appeal merits no relief. The trial court opinion comprehensively discusses and properly disposes of the question presented. (*See* Trial Court Opinion, filed December 9, 2016, at 5-7 (finding: at trial, Appellant stipulated to his prior convictions of IDSI and burglary, which are disqualifying offenses pursuant to Section 6105(b); additionally, Officer Jury testified he found Appellant with firearm on December 2, 2014; while Appellant admitted possession of firearm on that

date, Appellant claims evidence was insufficient to sustain conviction because he believed his period of firearm disqualification had expired; this mistake of law defense does not entitle Appellant to any relief; further, Appellant failed to present any evidence to demonstrate his probation officer misled him about his firearm disqualification; in fact, probation forms Appellant relies on to support claim explicitly explain terms of Appellant's firearm disqualification; moreover, Officer Jury credibly testified to previous encounter with Appellant in 2013, where Officer Jury informed Appellant he could not possess firearms due to his prior convictions of IDSI and burglary; under these circumstances, evidence was sufficient to sustain Appellant's conviction of persons not to possess firearms, and Appellant's challenge to sufficiency of evidence fails).  Therefore, we affirm Appellant's first issue on the basis of the trial court's opinion.

With respect to Appellant's second issue on appeal, Pennsylvania Rule of Appellate Procedure 2119 states in relevant part:

> **Rule 2119.  Argument**
>
> **(a)   General Rule.**  The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent.

Pa.R.A.P. 2119(a).   Significantly, "[a]n appellate brief must provide a discussion of the issue raised along with citations to pertinent legal authorities."   ***Commonwealth v. Vega***, 754 A.2d 714, 719 (Pa.Super.

2000). "This [C]ourt will not assume the role of advocate for an appellant when the issues in his brief are improperly raised and undeveloped or abandoned, lack support in the record, and are presented without reference to legal authority." *Id.* This Court will consider an issue abandoned where an appellant has identified the claim on appeal, but failed to develop it in his appellate brief. *Commonwealth v. Rodgers*, 605 A.2d 1228, 1239 (Pa.Super. 1992), *appeal denied*, 532 Pa. 655, 615 A.2d 1311 (1992). Abandonment of an issue on appeal results in waiver for purposes of our review. *Id.*

Instantly, Appellant does not offer any pertinent discussion or citation to relevant authority in support of his constitutional challenge to Section 6105 of the Crimes Code. Instead, Appellant concedes the issue has no merit and states the trial court properly disposed of the issue in its Rule 1925(a) opinion. Thus, Appellant has abandoned the issue on appeal, and it is waived for purposes of our review. *See id.*

Nevertheless, even if Appellant had properly preserved this issue, a challenge to the constitutionality of a statute is a pure question of law. *Commonwealth v. Proctor*, 156 A.3d 261, 268 (Pa.Super. 2017). As such, our standard of review is *de novo* and our scope of review is plenary. *Id.* This Court presumes "statutes are constitutional and require[s] those challenging the constitutionality of a statute to demonstrate that it clearly, plainly, and palpably violates the constitution." *Commonwealth v. Felder*,

75 A.3d 513, 516 (Pa.Super. 2013), *appeal denied*, 624 Pa. 671, 85 A.3d 482 (2014).

"When attacking the constitutionality of a statute, an appellant can raise two types of challenges: facial and as-applied." ***Commonwealth v. Thompson***, 106 A.3d 742, 763 (Pa.Super. 2014), *appeal denied*, 635 Pa. 743, 134 A.3d 56 (2016), *cert. denied*, ___ U.S. ___, 137 S.Ct. 106, 196 L.Ed.2d 87 (2016). Significantly,

> A facial attack tests a law's constitutionality based on its text alone and does not consider the facts or circumstances of a particular case. An as-applied attack, in contrast, does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right. A criminal defendant may seek to vacate his conviction by demonstrating a law's facial or as-applied unconstitutionality.

***Commonwealth v. Brown***, 26 A.3d 485, 493 (Pa.Super. 2011).

Here, the trial court addressed Appellant's challenge to 18 Pa.C.S.A. § 6105 as follows:

> [Appellant] has provided little, if anything, to support a constitutional challenge to the statute at issue. This is especially true where he has three prior felony convictions, all of which are quite serious. And at least two of [those] convictions, IDSI and burglary, suggest the sort of future dangerousness that warrants barring felons from possessing guns. There is thus nothing to distinguish [Appellant] from other felons so as to make his conviction unconstitutional.
>
> Moreover, even if [Appellant] had established that he was unlikely to commit serious crimes in the future—he did not even attempt to make any such showing—this would do him no good. Although [Appellant] relies on [***U.S. v.***

- 7 -

***Barton***, 633 F.3d 168, 174 (3d Cir. 2011)], which found that such a showing could restore a felon's Second Amendment rights, [***Binderup v. Attorney General United States of America***, 836 F.3d 336, 349 (3d Cir. 2016)] overruled ***Barton*** and foreclosed this possibility…. [Appellant's] as-applied constitutional challenge is therefore meritless.

To the extent [Appellant] is asserting a facial challenge—again, he does not say—this fails [because a] facial challenge to a legislative [a]ct is…the most difficult challenge to mount successfully…. [E]ven ***Barton***, cited by [Appellant], rejected a facial challenge to a similar statute [because the] felon dispossession statutes regulate conduct which is unprotected by the Second Amendment….

In light of [applicable] precedent…, [Appellant's] facial challenge is meritless. And again, his as-applied challenge is equally meritless where he has failed to articulate any reason—convincing or otherwise—why he should be allowed to possess guns despite his felony convictions. [Appellant's] second asserted ground for appeal should therefore also be rejected.

(***See*** Trial Court Opinion, filed December 9, 2016, at 9-11) (some citations omitted). We see no error in the court's analysis. Thus, even if Appellant had properly preserved his second issue on appeal, it would warrant no relief. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>9/15/2017</u>

**IN THE COURT OF COMMON PLEAS OF YORK COUNTY, PENNSYLVANIA**
**CRIMINAL DIVISION**

COMMONWEALTH          :

                       :

       v.             :      **NO. CP-67-CR-1009-2015**

                       :

**JOHN WOLFE,**          :

**Defendant/Appellant**      :

COUNSEL OF RECORD:

     Thomas L. Kearney, III, Esquire          Paul B. Orr, Esquire
     Counsel for the Commonwealth         Counsel for Defendant

<u>**OPINION IN SUPPORT OF ORDER PURSUANT TO RULE 1925(a) OF THE**</u>
<u>**RULES OF APPELLATE PROCEDURE**</u>

## I. <u>Introduction</u>

The Defendant has timely appealed to the Superior Court of Pennsylvania from his

judgment of sentence of two and one-half to five years' incarceration for possession of

firearm prohibited and hunting without securing a license.[1]  The Court directed the Defendant

to file a Pa. R.A.P. 1925(b) statement ("Statement"), and he has done so.  In his Statement,

the Defendant challenges only his possession of firearm prohibited conviction, arguing it

cannot stand where: 1) "he signed a form showing his firearm disqualification would expire

on a certain date"; and 2) recent federal case law grants him a right to possess firearms.

(Statement at 1-2.)  After carefully reviewing the Statement, record, and governing law, the

Court finds the Defendant's arguments lack merit.  The Court therefore urges affirmance of

the judgment of sentence.

---

[1] 18 Pa.C.S.A. §6105(a)(1) and 34 Pa.C.S.A. §2711(a)(1), respectively.

## II.  Background

### *Trial and Sentencing*

The parties began the Defendant's bench trial by stipulating that he had been previously convicted of three felonies: involuntary deviate sexual assault ("IDSI"); burglary; and possession with intent to deliver.  (Notes of Testimony, 4/8/16, at 3-4.)

Amy Day, with the York County Probation Department, testified that the Defendant had been previously under probation due to his convictions.  (*Id.* at 5.)  The forms reflecting his probation conditions gave notice that possession of firearms was prohibited for those convicted of a felony.  (*Id.* at 5-6; Commonwealth's Exhibits 3-5.)  The Defendant had signed these forms.  (*Id.*)

Day acknowledged the forms gave both effective dates and expiration dates for the Defendant's probation conditions.  (N.T., 4/8/16, at 7-10; Commonwealth's Exhibits 3-5.)  The last of these expiration dates was September 22, 1999.  (*Id.*)  Day said the regulations and conditions of probation were what expired on the listed expiration dates.  (N.T., 4/8/16, at 10-11.)  The section prohibiting felons from possessing firearms, however, was in a separate provision citing the Federal Omnibus Crime Control and Safe Streets Act of 1968.  (*Id.* at 11; Commonwealth's Exhibits 3-5.)  Day said it was not the policy of her department to tell defendants they can possess a firearm once their probation sanctions expire, but admitted she had no firsthand knowledge of what the Defendant was told.  (N.T., 4/8/16, at 11-12.)

2

In December, 2014, Conservation Officer Kyle Jury found the Defendant hunting with a shotgun in a safety zone on private property. (*Id.* at 14-16, 18, 24-25.) Officer Kevin Mountz confirmed that the Defendant possessed the shotgun. (*Id.* at 33-34.) The owner of the property had previously told Jury that he had not given anyone permission to hunt there. (*Id.* at 29.) Jury had the Defendant unload the shotgun, then took possession of it and asked for a hunting license and identification. (*Id.* at 18-19.) The Defendant did not have either. (*Id.* at 19.) Regulations require hunters to carry licenses when they are hunting. (*Id.* at 19.)

Jury told the Defendant, "[Y]ou know you're not allowed to have firearms, John." (*Id.* at 20.) This was because he recognized the Defendant from an encounter in 2013. (*Id.* at 16.) In that prior encounter, responding to a report that the Defendant had shot a deer, Jury had also explained to him that "he was not allowed to possess firearms[.]" (*Id.* at 17-18.) The Defendant was not charged for that incident. (*Id.*)

Asked whether the Defendant admitted during the 2014 incident whether he knew he was not allowed to have firearms, Jury said, "In certain words, I guess you could say that. He made one comment . . . that he told his wife he was going to give up gun hunting." (*Id.* at 20.) After confirming the Defendant had convictions prohibiting his possession of firearms, Jury arrested him. (*Id.* at 21.) A pipe with marijuana residue was "recovered at central booking." (*Id.* at 21, 26-27, 31.)

The Defendant took the stand in his own defense. (*Id.* at 36.) He admitted being told he could not possess guns during his probation. (*Id.* at 38.) He did not keep guns in his house while he was on probation. (*Id.* at 46.) He had been off probation since 1999, and had

3

received hunting licenses since that time. (*Id.* at 40-41.) One of these licenses was in effect in December, 2014. (*Id.* at 42.) He did not have it when Officer Jury confronted him because he had left his house in a hurry that morning. (*Id.* at 42-43.) He said he had consent to hunt in that area. (*Id.* at 43-44.)

The Defendant testified he did not know he was violating any laws by possessing a firearm. (*Id.* at 44-45.) He said he used the gun that morning to shoot a turkey, and that he had bought guns despite being a felon. (*Id.* at 48, 45.) Asked whether Jury had previously told him he was not allowed to have guns "as a convicted felon," the Defendant said, "Maybe a vague conversation directed around that statement you mentioned. I don't know if it was directed in, like, that form." (*Id.* at 49.)

In closing, defense counsel cited *District of Columbia v. Heller*, 554 U.S. 570 (2008), *United States v. Barton*, 633 F.3d 168 (3d Cir. 2011), and *Binderup v. Holder*, 2014 WL 4764424 (E.D. Penn. 2014),[2] and argued that "state court decisions regarding gun law disabilities can be set aside on second amendment grounds." (N.T., 4/8/16, at 53-54.) He noted the Defendant could still buy a hunting license, and argued he was likely confused by the expiration date on his probation forms. (*Id.*) Counsel said, "He's not an attorney. He's not a judge. He's just a country boy from York who likes to hunt." (*Id.* at 54.)

After continuing the cause to review the testimony and the law, the Court found the Defendant guilty of possession of firearm prohibited and hunting without securing a license,

---

[2] *Binderup* is an unpublished decision that has since been supplanted by *Binderup v. Attorney General United States of America*, 836 F. 3d 336 (3d Cir. 2016) (*en banc*).

4

but not guilty of the remaining charges. (N.T., 6/28/16, at 1.) The Court sentenced him to two and one-half to five years' incarceration. (*Id.* at 5.)

The Defendant timely filed notice of appeal, and then submitted his Statement as directed.

### III. Matters Complained of on Appeal

In his Statement, the Defendant challenges his possession of firearm prohibited conviction on the grounds that: 1) the evidence was insufficient where "he signed a form showing his firearm disqualification would expire on a certain date"; and 2) recent federal case law grants him a right to possess firearms. (Statement at 1-2.) For the following reasons, neither argument is persuasive.

*Sufficiency of the Evidence*

The Defendant's first asserted ground for appeal concerns the sufficiency of the evidence. The test for such a challenge is whether, viewing the evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth, the trier of fact could have found guilt beyond a reasonable doubt. *Commonwealth v. Rainey*, 656 A.2d 1326, 1330 (Pa. 1995). Under this standard, there is no basis to disturb the Defendant's conviction.

The Defendant was convicted under 18 Pa.C.S.A. §6105(a)(1), which requires proof: "(1) that the person has been convicted of an offense listed in Subsection (b) and/or falls into one of the categories of Subsection (c); and (2) that the person possesses or otherwise controls a firearm." *Commonwealth v. Alvarez-Herrera*, 35 A.3d 1216, 1218 (Pa. Super.

5

2011). There is little or no dispute that the Commonwealth proved both of these elements beyond a reasonable doubt.

The first element was unquestionably established where the parties stipulated that before the incident in question, the Defendant had been convicted of IDSI and burglary---both of which are specifically enumerated under subsection (b) of the statute. (N.T., 4/8/16, at 3-4.) *See* 18 Pa.C.S.A. §6105(b) (including IDSI and burglary as offenses disallowing possession of a firearm). And the second element was established by Officer Jury's testimony, as corroborated by Officer Mountz, that he found the Defendant with a shotgun. (N.T., 4/8/16, at 14-16, 18, 24-25, 32-33.) If that were not enough, the Defendant himself admitted on the stand that he possessed a firearm that day. (*Id.* at 51.)

The Defendant nevertheless suggests his conviction cannot stand because he understood "his firearm disqualification would expire on a certain date." (Statement at 1.) But there is no expiration date for the Defendant's firearm disqualification. *See* 18 Pa.C.S.A. §6105(a)(1). The Defendant is therefore asserting he was mistaken as to the legal effect of his firearm prohibition, *i.e.*, a "mistake of law" defense. And "[g]enerally speaking, ignorance or mistake of law is no defense . . .." 18 Pa.C.S.A. §304 (official comment). *See also Commonwealth v. Brandon*, 51 A.3d 231, 235 (Pa. Super. 2012) (ignorance of the law is no excuse).

There is a narrow exception to this rule, known as the "reliance doctrine," which can apply when a defendant has been "affirmatively misled" into violating the law. *See Commonwealth v. Kratsas*, 764 A.2d 20, 51-54 (Pa. 2001). But this is "a narrow exception,"

6

and "it is questionable whether, and to what extent, the reliance doctrine is relevant to substantive elements of criminal offenses . . .." *Id.* at 52-53. And for it to apply here, the Court would have to believe the Defendant was actually misled into believing he was allowed to own a firearm.

The Court does not believe as much, and the evidence actually contradicts the notion. In fact, the forms the Defendant claims misled him give no reason to believe his firearm disqualification ever expired. As explained at trial, the section of these forms that prohibits felons from possessing firearms is in a separate provision from the probation conditions that expired on the listed dates. (*Id.* at 11; Commonwealth's Exhibits 3-5.) Further, Officer Jury credibly testified that he had previously warned the Defendant he was not allowed to have guns. (N.T., 4/8/16, at 17-18.) The Defendant half-heartedly disputed this and said he did not know he was breaking the law by possessing a gun. (*Id.* at 49, 44-45.) But the evidence showed he had every reason to know he was not allowed to have guns.

As such, even if the "reliance doctrine" could provide a defense in this case, the evidence did not support it. And the evidence was more than sufficient, as the elements of the offense in question were overwhelmingly established. This contention therefore lacks merit and should be rejected.

### Second Amendment Jurisprudence

The Defendant's second asserted ground for appeal is that "recent federal caselaw jurisprudence" grants him the right to possess a firearm. (Statement at 2.) In his Statement, the Defendant provides no supporting authority and no argument beyond this simple

7

declaration. (*Id.*) At trial, however, he cited *District of Columbia v. Heller*, 554 U.S. 570 (2008), *United States v. Barton*, 633 F.3d 168 (3d Cir. 2011), and *Binderup v. Holder*, 2014 WL 4764424 (E.D. Penn. 2014). (N.T., 4/8/16, at 53-54.) These cases do not support the Defendant's position for the following reasons.

*Heller* was a watershed decision, in which the United States Supreme Court announced that "the Second Amendment conferred an individual right to keep and bear arms." *Heller*, 554 U.S. at 595. But the Court hastened to add, "Of course the right was not unlimited, just as the First Amendment's right of free speech was not . . .." *Id.* And in this vein, the Court specifically addressed and approved prohibitions on convicted felons possessing firearms:

> Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, **nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons** and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

*Id.* at 626-27 (emphasis added).

Additionally, when the Court revisited the Second Amendment two years later in *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010), it quoted this language and stressed, "We repeat those assurances here."

Since that time, defendants have unsuccessfully asserted constitutional challenges to provisions like the one at issue here. *See, e.g., United States v. Rozier*, 598 F.3d 768, 770-71 (11th Cir. 2010); *United States v. Vongxay*, 594 F.3d 1111, 1114-18 (9th Cir. 2010); *United*

8

*States v. McCane*, 573 F.3d 1037, 1047 (10th Cir. 2009); and *United States v. Anderson*, 559 F.3d 348, 352 n. 6 (5th Cir. 2009), *cert. denied*, —— U.S. ——, 129 S.Ct. 2814 (2009).

And just recently, the Third Circuit Court of Appeals, sitting *en banc*, set forth the burden for mounting an as-applied challenge[3] to such regulations: the challenger "must (1) identify the traditional justifications for excluding from Second Amendment protections the class of which he appears to be a member . . . and then (2) present facts about himself and his background that distinguish his circumstances from those of persons in the historically barred class . . .." *Binderup v. Attorney General United States of America*, 836 F. 3d 336, 347 (3d Cir. 2016) *(en banc)* (citations omitted). This requires more than blanket assertions, like the Defendant's, that he has a federal right to possess arms: "No doubt a challenger cannot prevail merely on his say-so. Courts must find the facts to determine whether he has adequately distinguished his circumstances from those of persons historically excluded from Second Amendment protections." *Id.*

Here, the Defendant has provided little, if anything, to support a constitutional challenge to the statute at issue. This is especially true where he has three prior felony convictions, all of which are quite serious. And at least two of these convictions, IDSI and burglary, suggest the sort of future dangerousness that warrants barring felons from possessing guns. There is thus nothing to distinguish the Defendant from other felons so as to make his conviction unconstitutional. *Cf. Binderup*, 836 F. 3d at 340, 351 (challengers'

---

[3] The Defendant does not specify whether he is asserting a facial or an as-applied constitutional challenge. But because his verbiage---"he has a right under recent federal caselaw"---suggests his challenge is strictly as-applied, the Court addresses this first. (Statement at 2.)

misdemeanor convictions for corrupting a minor and driving while intoxicated "were not serious enough to strip them of their Second Amendment rights").

Moreover, even if the Defendant had established that he was unlikely to commit serious crimes in the future---he did not even attempt to make any such showing---this would do him no good. Although the Defendant relies on *Barton*, 633 F.3d at 174, which found that such a showing could restore a felon's Second Amendment rights, *Binderup* overruled *Barton* and foreclosed this possibility: "We reject [*Barton*'s] claim that the passage of time or evidence of rehabilitation will restore the Second Amendment rights of people who committed serious crimes." *Binderup*, 836 F. 3d at 349. The Defendant's as-applied constitutional challenge is therefore meritless.

To the extent the Defendant is asserting a facial challenge---again, he does not say---this fails, too. "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). And even *Barton*, cited by the Defendant, rejected a facial challenge to a similar statute, explaining, "[B]ecause *Heller* requires that we 'presume,' under most circumstances, that felon dispossession statutes regulate conduct which is unprotected by the Second Amendment, Barton's facial challenge must fail." *Barton*, 633 F.3d at 172 (collecting cases).

In light of these precedents, and the language of *Heller* itself as repeated in *McDonald*, the Defendant's facial challenge is meritless. And again, his as-applied challenge

10

is equally meritless where he has failed to articulate any reason---convincing or otherwise---why he should be allowed to possess guns despite his felony convictions. The Defendant's second asserted ground for appeal should therefore also be rejected.

## IV.    Conclusion

For the reasons stated above, this Court respectfully urges affirmance of the Defendant's judgment of sentence.

BY THE COURT,

DATED: ~~November~~ _8th_, 2016
*December*

_____
MICHAEL E. BORTNER, JUDGE

RECEIVED/FILED
YORK COUNTY
JUDICIAL CENTER
2016 DEC -9 PM 1:42
DON O'SHELL
CLERK OF COURTS

11